AO 106 (Rev. 04/10) Application for a Search Warrant

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

FEB 10 2021

JULIA C. DUDLEY, CLERK
BY *[signature]*
CLERK

# UNITED STATES DISTRICT COURT

for the
Western District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Cell phones and Computer as Detailed in Attachment A
Located in physical possession of SA C. Trevor
McMurray and stored in Bristol, VA 24202.

) ) ) ) ) )

Case No. 1:21mj32

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____ Western _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C.§1040(a)(1,2) | Fraud in connection with major disaster or emergency benefits |
| 18 U.S.C. § 371 | Conspiracy to defraud the United States |
| 18 U.S.C. § 1343/§1349 | Wire fraud & Conspiracy to commit wire fraud |

The application is based on these facts:
See Attachment

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joseph Harrilla, Special Agent, USDOL-OIG
*Printed name and title*

*telephonically.*
Sworn to before me ~~and signed in my presence.~~

Date: 2/10/21

City and state: Abingdon, VA

_____
*Judge's signature*

Pamela Meade Sargent, United States Magistrate Judge
*Printed name and title*

*United States District Court*

*Western District of Virginia*

| | |
|---|---|
| IN THE MATTERS OF THE SEARCH §<br>OF INFORMATION ASSOCIATED §<br>WITH: §<br>Various Cell Phones and Laptop §<br>Computer incorporated §<br>as Attachment A §<br>§<br>LOCATED AT in physical possession of §<br>SA C. Trevor McMurray and stored §<br>In Bristol, Virginia 24202 § | MAGISTRATE NO: |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH

I, Joseph M. Harrilla, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     Your affiant makes this affidavit in support of an application for a search warrant to examine the contents of the following:

a. LG Cell Phone P/N EAC64578001 seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN

1

DANIELLE CHYTKA seized pursuant to search warrant 1:21mj14. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

b. Samsung AT&T Cell Phone – no identifiers – seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA seized pursuant to search warrant 1:21mj14. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

c. Verizon Galaxy Cell Phone Note 4 – no identifiers – seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA pursuant to search warrant 1:21mj14. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

d. Samsung Galaxy S10 Cell Phone – no identifiers – seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA pursuant to search warrant 1:21mj14. This

item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

e.  HTC Cell Phone – no identifiers - seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA pursuant to search warrant 1:21mj14. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

f.  Samsung S9 Note – SM-N960U1 – surrendered to investigators by LEELYN DANIELLE CHYTKA on 01/16/2021 pursuant to the signed Consent to Search Attachment DD. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

g.  LG TracFone GPLGL722DCGB Model: ZNFL722DL – received from GREG TACKETT and inventoried on January 4, 2021 when he was arrested by Virginia State Police for Driving Under the Influence. The cell phone was inventoried pursuant to GREG TACKETT's arrest and turned over to investigators in this case on January 29, 2021. This

3

item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

h. LG Cell Phone in Otterbox Model #LG722DL – received from JEFF TACKETT and inventoried on January 11, 2021 when he was arrested for possession of drugs and drug paraphernalia by the Russell County Virginia Sheriff's Office. The cell phone was inventoried pursuant to JEFF TACKETT's arrest and turned over to investigators in this case on February 5, 2021. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.;

i. Dell Inspiron Laptop ST: 3SNV463 EX: 8263482843 surrendered to investigators by LEELYN DANIELLE CHYTKA on 01/16/2021 as documented in Attachment C pursuant to the signed Consent to Search Attachment D. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia;

2. The above referenced devices hereafter will be referred to as items listed in Attachment A.

4

3.      I am a Special Agent with the United States Department of Labor, Office of Inspector General ("DOL-OIG"). I have been assigned to the Roanoke Field Office since August 2009. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. I have a Master of Science in Administration, and a Financial Crimes Investigator Certificate. I have over 20 years' experience conducting criminal investigations involving matters of fraud, theft, conspiracy, false statements, and forgery. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses. While assigned to the Roanoke Field Office, I have conducted criminal investigations of individuals, organizations and businesses related to the Commonwealth of Virginia ("VA") Unemployment Insurance ("UI") Benefit Program and the Pandemic Unemployment Assistance Program ("PUA").

4.      Special Agent C. Trevor McMurray, Internal Revenue Service Criminal Investigation, has consulted with Special Agent Christopher Wooten, a trained Computer Investigative Specialist. Special Agent Christopher Wooten has been employed as a Special Agent with the Internal Revenue Service Criminal Investigation since 2010. Along with his basic training as a Special Agent, he also attended Basic Computer Evidence Recovery Training conducted at the Federal

Law Enforcement Training Center in 2016. He also attended an annual CPE involving computer seizures and data recovery. These training sessions specifically deal with seizing computers, retrieving and analyzing data from the computers, forensic software, network and Internet investigations. Special Agent Wooten has participated in numerous search warrants involving computers and related equipment. Since his training, Special Agent Wooten's regular duties have included the seizure and recovery of data from computers, cell phones, and other electronic devices suspected of containing data related to crimes being investigated.

5.    Your affiant knows that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigations in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are instrumentalities, fruits, or evidence of a crime.

6

6.     Based on your affiant's training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 371 (Conspiracy to defraud US), 1040(a)(1) (scheme to defraud major disaster or emergency benefits), 1040(a)(2) (false statement regarding major disaster or emergency benefits), 1343 (wire fraud), and 1349 (conspiracy to commit wire fraud) and have been committed by GREGORY M. TACKETT (GREG TACKETT), JEFF RYAN TACKETT (JEFF TACKETT), LEELYN DANIELLE CHYTKA (CHYTKA) and other known persons.  There is also probable cause to search the cell phones and laptop computer listed in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

7.     The information in this affidavit is derived from your affiant's personal knowledge, public records, law enforcement personnel, and other investigative techniques.   This affidavit does not include every known fact about this investigation.  Your affiant believes this information to be both truthful and reliable.

## PROBABLE CAUSE

8.     To establish probable cause to search the devices listed in Attachment A, your affiant incorporates by reference the representations made in the attached

Application and Affidavit for Search Warrant, and Search and Seizure Warrant issued by this honorable court on January 19, 2021, docket number 1:21mj14 in support of the background and probable cause of this affidavit. Your affiant avers that the information provided in the Application and Affidavit for Search Warrant, and Search and Seizure Warrant issued by this honorable court on January 19, 2021, in docket number 1:21mj14, is still accurate.

9.      The Application and Affidavit for Search Warrant, and Search and Seizure Warrant issued by this honorable court on January 19, 2021, in docket number 1:21mj14 as well as this affidavit are intended to show only that there is sufficient probable cause for the requested warrant and do not set forth all of the investigative knowledge about this matter.

10.     The Devices are currently in the lawful possession of the Internal Revenue Service, Criminal Investigations as described in Attachment A in this affidavit.

11.     CHYTKA was interviewed by investigators on January 16, 2021 while incarcerated at the Lincoln County Detention Center located in Lincolnton, North Carolina. During this interview, CHYTKA waived her Miranda rights and admitted to fraudulently filing for PUA benefits for herself, JEFF TACKETT, GREG TACKETT and others utilizing the Dell Inspiron Laptop as referenced in

Attachment A. CHYTKA admitted to using the address of 108 Twin Circle Drive, Lebanon, Virginia as the address on all the applications in order to keep up with the cards once they were issued by the VEC.

12.    CHYTKA advised she attempted to start a business called D & R Accounting to facilitate the fraudulent filing of the UIA and PUA claims. CHYTKA explained that D & R stood for "Danielle and Roo." "Roo" is a known alias for GREG TACKETT.

13.    CHYTKA further advised that she would check the status of claims with VEC utilizing cell phones when she was away from her laptop computer. At the time of her arrest, CHYTKA and GREG TACKETT were traveling together in North Carolina.

14.    GREG TACKETT was interviewed by investigators on January 12, 2021. He advised he signed up for pandemic benefits in May 2020. He advised that his "old lady" CHYTKA entered his information in the computer. The reason there were so many names associated with the 108 Twin Circle Drive address was because there was a business operated out of the house, he shared with CHYTKA called DNR (D & R) Accounting LLC.

15.    Based on your affiant's training and experience it is known that individuals involved in fraudulent schemes to defraud often utilize multiple cell

9

phones to carry out their scheme. As such, your affiant is requesting to search the devices referenced in Attachment A.

## TECHNICAL TERMS

16.    Based on your affiant's training and experience, and consultation with Special Agent Christopher Wooten, the following technical terms are used to convey the following meanings:

   a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and

10

playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a device that records still and moving images digitally. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store any digital data, such as word processing documents, even if the device is not designed to access such files.

11

Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a

GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

13

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17.   Based on your affiant's training, experience, and research, it is known that the Devices have capabilities that allow it to serve as a wireless telephone, wireless email, organizer, internet browser, digital camera, PDA, portable media player, and GPS navigation device.  In your affiant's training and experience,

14

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC DEVICES AND STORAGE

18. As described above and in Attachment B, this application seeks permission to search and seize things that the Devices might contain, in whatever form they are stored. Based on your affiant's knowledge, training, and experience, your affiant knows that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensic tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

19. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law

15

enforcement searches for information.  These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B or perusing all stored information briefly to determine whether it falls within the scope of the warrant.  In light of these difficulties, the IRS intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## **CONCLUSION**

20. Based on the foregoing, your affiant requests this Court issue the requested search warrant to be executed on Internal Revenue Service – Criminal Investigation who is in possession of items requested to be searched, as there exists probable cause to permit the execution of the requested warrant.

Respectfully submitted,

Joseph M. Harrilla

Joseph M. Harrilla

Special Agent

Department of Labor

Office of the Inspector General

Subscribed and sworn to before me *telephonically.*

on 2/10/21 :

UNITED STATES MAGISTRATE JUDGE

//s/ Daniel J. Murphy

17

## ATTACHMENT A

a.  LG Cell Phone P/N EAC64578001 seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA seized pursuant to search warrant 1:21mj14. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

b.  Samsung AT&T Cell Phone – no identifiers – seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA seized pursuant to search warrant 1:21mj14. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

c.  Verizon Galaxy Cell Phone Note 4 – no identifiers – seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA pursuant to search warrant 1:21mj14. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

d.    Samsung Galaxy S10 Cell Phone – no identifiers – seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA pursuant to search warrant 1:21mj14. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

e.    HTC Cell Phone – no identifiers - seized from a 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA pursuant to search warrant 1:21mj14. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

f.    Samsung S9 Note – SM-N960U1 – surrendered to investigators by LEELYN DANIELLE CHYTKA on 01/16/2021 pursuant to the signed Consent to Search in Attachment DD. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

g.    LG TracFone GPLGL722DCGB Model: ZNFL722DL– received from GREG TACKETT and inventoried on January 4, 2021 when he was arrested by Virginia State Police for Driving Under the Influence. The cell phone was

inventoried pursuant to GREG TACKETT's arrest and turned over to investigators in this case on January 29, 2021. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

h. LG Cell Phone in Otterbox Model #LG722DL – received from JEFF TACKETT and inventoried on January 11, 2021 when he was arrested for possession of drugs and drug paraphernalia by the Russell County Virginia Sheriff's Office. The cell phone was inventoried pursuant to JEFF TACKETT's arrest and turned over to investigators in this case on FebruaryFebruary 5, 2021. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

i. Dell Inspiron Laptop ST: 3SNV463 EX: 8263482843 surrendered to investigators by LEELYN DANIELLE CHYTKA on 01/16/2021 as documented in Attachment C pursuant to the signed Consent to Search Attachment D. This item is presently in the possession of SA Trevor McMurray, in Bristol, Virginia, which is in the Western District of Virginia.

## ATTACHMENT B

### Particular Things to be Seized by the Government

For the time period March 2020 – present, all evidence, instrumentalities, contraband or fruits of crime to commit violations of 18 U.S.C. §§ 371 (Conspiracy to defraud US), 1040(a)(1) (scheme to defraud major disaster or emergency benefits), 1040(a)(2) (false statement regarding major disaster or emergency benefits), 1343 (wire fraud), and 1349 (conspiracy to commit wire fraud).

1.    Any type of record, correspondence, or mail from VEC.

2.    Any and all VEC documents and records relevant to the crimes under investigation.

3.    Any and all records relating to monetary expenditures or financial transactions, such as money orders, wire transfers, cashier's checks, and receipts.

4.    All records, contained in the devices listed in Attachment A hereinafter "Devices," which are related to dealings and financial activities of the CHYTKA and others but not limited to the following:

   a.  Emails pertaining to unemployment, VEC, or monetary expenditures or financial transactions;

   b.  Lists of customers and related identifying information;

   c.  Internet browsing history;

21

d.  Calendars;

e.  Contacts;

f.  Types, amounts, and nature of financial transactions as well as dates, places, and amounts of specific transactions;

g.  Sources of information (including names, addresses, phone numbers, or any other identifying information);

h.  Schedule of travel;

i.  Bank records, checks, credit card bills, account information, and other financial records.

5.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, viewed accessed or deleted, (e.g., logs, phonebooks, saved usernames and passwords, documents, and browsing history);

6.      Records and things evidencing the use of any Internet Protocol address including:

a.  records of Internet Protocol addresses used;

22

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**ATTACHMENT C**

## INMATE PERSONAL PROPERTY TRANSFER FORM
(HOJA PERSONAL DE LA CARACTERÍSTICA DEL INTERNO)

Inmate's Name (nombre del interno):                Date (fecha):

_Leelynn Danielle Chytka_                          1-16-21

☐     Incoming Property (caracteristica entrante)

I certify that the listed items are being left at the Detention Center per the inmate's request by: (Certifico
que los articulos mencionados se están dejando en el centro de la detención por la petición del interno.)

☒     Outgoing Property  (caracteristica saliente):

I authorize the release of the checked items to (Autorizo el lanzamiento de los articulos
comprobados):

| | |
|---|---|
| ○ | ☒ Samsung Galaxy Ca14c9 |
| ○ | ○ Spiral notebook |
| ○ | ○ Pink notebook |
| ○ | ○ laptop computer, dell w/charger |
| ○ | ○ Bottle w/bag |
| ○ | ○ |

Signature of person leaving OR picking up items (firma de la persona que sale de
articulos):
     ☒ Trevor McMurray          C. Lush N. Maner
Inmate's Signature (firma del interno ):
     ☒ Leelynn Chytka
OFFICER'S SIGNATURE (firma del oficial):
          Wesley K Neel

Revised 1/14/09

24

NORTH CAROLINA INTERNAL RECORDS          ☑ RECOVERED/  ☑ FOUND PROPERTY REPORT

| AGENCY [illegible handwriting] | DATE [illegible] | DATE/TIME REPORTED [illegible] MO DAY YR | OCA FILE NO. |
|---|---|---|---|

Owner: Leelyn Danielle Chytka   Address: 108 Twin Circle Dr, Lateman VA   Phone: 980-341-3088

Found in possession of: Leelyn Chytka (detention) @ CCW   Address: 700 John Howell Memorial Dr, WCTM [illegible]   Phone: 704-732-9600

Location from which property was obtained: ___   Collecting Officer: ___

| PROPERTY CONTROL NUMBER | DESCRIPTION OF ARTICLES (include model, serial no., identifying marks, condition, etc.) | PROPERTY VALUE |
|---|---|---|
| | Samsung Schirt 9 | |
| | Sound Notebook | |
| | Pink Notebook | |
| | Laptop computer Dell w/ charger | |
| | ipad Title 2009 Photo | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

NARRATIVE: Property being obtained by Special agent of the IRS with consent of Inmate Leelynn Chytka. Property Release or folder signed by inmate

| OFFICER'S NAME | DATE/TIME SUBMITTED | SUPERVISOR'S NAME | CASE DISPOSITION | PAGE |
|---|---|---|---|---|
| Wesley Kennedied | MO DAY YR: 01 16 21 | Sgt Marcos Rhyne | ☐ UNFOUNDED ☐ CLEARED BY ARREST ☐ EXCEPTIONAL CLEARED-ADULT ☐ EXCEPTIONAL CLEARED-JUV | OF |
| OFFICER'S SIGNATURE | | CASE STATUS: ☑ FURTHER INVESTIGATION ☐ INACTIVE ☐ CLOSED | | |

25

# CHAIN OF CUSTODY

| Property Control No. | | Date | Released By | Received By | Purpose for Change of Custody |
|---|---|---|---|---|---|
| | | Print Name *Wesley Kevin Neal* | | Print Name *Trevor McMurray* | Consent of Inmate & Victim Digital |
| | | Signature *Wesley K. Neal* | | Signature *Trevor McMurray* | |
| | | Print Name | | Print Name | |
| | | Signature | | Signature | |
| | | Print Name | | Print Name | |
| | | Signature | | Signature | |
| | | Print Name | | Print Name | |
| | | Signature | | Signature | |
| | | Print Name | | Print Name | |
| | | Signature | | Signature | |
| | | Print Name | | Print Name | |
| | | Signature | | Signature | |
| | | Print Name | | Print Name | |
| | | Signature | | Signature | |
| | | Print Name | | Print Name | |
| | | Signature | | Signature | |

## FINAL DISPOSAL ACTION

RELEASED TO OWNER OR OTHER (Name / Address) _____

DESTROY _____
OTHER (Specify) _____

## FINAL DISPOSAL AUTHORITY

ITEM(S) _____ ON THIS RECEIPT, PERTAINING TO THE INVESTIGATION INVOLVING _____

(Name)                                          (Address)

                                          Case Docket Number

(IS) (ARE) NO LONGER REQUIRED AS EVIDENCE AND MAY BE DISPOSED OF AS INDICATED ABOVE.  (If article(s) must be retained, do not sign, but explain in separate correspondence.)

Judge / Sheriff of Superior District Court                    Signature                                          Date

## WITNESS TO DESTRUCTION OF EVIDENCE

THE ARTICLE(S) LISTED AT CONTROL NUMBER(S) _____ (WAS) (WERE) DESTROYED BY THE EVIDENCE CUSTODIAN, IN MY PRESENCE, ON DATE INDICATED ABOVE.

Clerk of Superior Court (Signature)                    Evidence Property Custodian (Signature)

# ATTACHMENT D

Consent Search of Samsung S9 Note
1-276-219-5857
SM-N960U1
RF8K81VP8XB
356652909070932Y

I Danielle Chytka give ~~FB~~ permission
to search above identified phone.
to SA. Trevor McMurray

X _Reitlynn Chytka_ 1/16/21

X C. Trevor McMurray 1/16/21

Phil Obert

27

Dell Inspirion
ST: 35NV463
EX: 826348 2843

I Danielle Chytka give consent to
search + image abue idetified phone
to SA C. Trevor McMurray


X _Danielle Chytka_ 1/16/21


X _C. Trevor McMurray_ 1/16/21



PW 1641

28

AO 106 (Rev. 04/10)  Application for a Search Warrant

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

# UNITED STATES DISTRICT COURT
for the

Western District of Virginia  ☒

JAN 19 2021

JULIA C. DUDLEY, CLERK

BY: _____
DEPUTY CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
2000 Dodge Pickup Truck
, VIN: 1B7HF13Z6YJ117900
Stored at 75 Hamilton Street, St. Paul, VA 24283

}
}
}
}
}
}

Case No. 1:21 MJ 14

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

located in the _____ Western _____ District of _____ Virginia _____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371 | Conspiracy to defraud the U.S. |
| 18 U.S.C. §§1040(a)(1) | Scheme to defraud major disaster or emergency benefits |
| 18 U.S.C. §§1040(a)(2) | False statments regarding major disaster or emergency benefits |
| 18 U.S.C. §§ 1343/1349 | Wire fraud/Conspiracy to commit wire fraud |

The application is based on these facts: See Attachment

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joseph Harrilla, Special Agent USDOL-OIG
*Printed name and title*

Sworn to before me and signed in my presence.
by telephone.

Date: 1/19/21

City and state: Abingdon, VA

_____
*Judge's signature*

Pamela Meade Sargent USMJ
*Printed name and title*

*United States District Court*

*Western District of Virginia*

| | | |
|---|---|---|
| IN THE MATTERS OF THE SEARCH | § | MAGISTRATE NO: |
| OF INFORMATION ASSOCIATED | § | |
| WITH: | § | |
| 2000 Dodge Pickup Truck | § | |
| Virginia Registration 2121XE | § | |
| VIN: 1B7HF13Z6YJ117900 | § | |
| Registered to: | § | |
| LEELYN DANIELLE CHYTKA | § | |
| | § | |
| STORED AT PREMISES | § | |
| CONTROLLED | § | |
| BY: | § | |
| Hamilton Wrecker Service | § | |
| 75 Hamilton Street | § | |
| St. Paul, Virginia 24283 | § | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH

I, Joseph Harrilla, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     Your affiant makes this affidavit in support of an application for a

search warrant for the contents of a 2000 Dodge Pickup Truck, bearing Virginia

registration 2121XE, VIN:   1B7HF13Z6YJ117900, black in color registered to

1

LEELYN DANIELLE CHYTKA.  The vehicle is presently stored at Hamilton's Wrecker Service located at 75 Hamilton Street, St. Paul, Virginia 24283 which is located in the Western District of Virginia.

2.     I am a Special Agent with the United States Department of Labor, Office of Inspector General ("DOL-OIG").  I have been assigned to the Roanoke Field Office since August 2009.  I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center.  I have a Master of Science in Administration, and a Financial Crimes Investigator Certificate.  I have more than 20 years' experience conducting criminal investigations involving matters of fraud, theft, conspiracy, false statements, and forgery.  I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses.  While assigned to the Roanoke Field Office, I have conducted criminal investigations of individuals, organizations and businesses related to the Commonwealth of Virginia ("VA") Unemployment Insurance ("UI") Benefit Program and the Pandemic Unemployment Assistance Program ("PUA").

3.     Based on your affiant's training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C.

§§ 371 (Conspiracy to defraud US), 1040(a)(1) (scheme to defraud major disaster or emergency benefits), 1040(a)(2) (false statement regarding major disaster or emergency benefits), 1343 (wire fraud), and 1349 (conspiracy to commit wire fraud) and have been committed by GREGORY M. TACKETT (GREG TACKETT), JEFFERY RYAN TACKETT (JEFF TACKETT), LEELYN DANIELLE CHYTKA (CHYTKA) and other known persons. There is also probable cause to search the 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment A.

4.     The information in this affidavit is derived from your affiant's personal knowledge, public records, law enforcement personnel, and other investigative techniques. This affidavit does not include every known fact about this investigation. Your affiant believes this information to be both truthful and reliable.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the

United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6.    GREG TACKETT, JEFF TACKETT, and CHYTKA are residents of Lebanon, Virginia which is located within the Western District of Virginia.  GREG TACKETT and JEFF TACKETT are brothers and are presently in custody and are housed at the Southwest Virginia Regional Jail Authority located in Abingdon, Virginia.

### BACKGROUND CONCERNING CARES Act and Pandemic Benefits

7.    This investigation involves a conspiracy to defraud the United States of Pandemic Unemployment Assistance benefits by the named targets, and others, many of whom were incarcerated at the time the claims for benefits were filed.

8.    Unemployment Insurance (UI) is a state-federal program that provides monetary benefits to eligible lawful workers. Although state workforce agencies (SWAs) administer their respective UI programs, they must do so in accordance with federal laws and regulations. UI payments (benefits) are intended to provide temporary financial assistance to lawful workers who are unemployed through no fault of their own.  Each state sets its own additional requirements for eligibility, benefit amounts, and length of time benefits can be paid. Generally, UI weekly benefit amounts are based on a percentage of your earnings over a base period. In

4

the Commonwealth of Virginia, the Virginia Employment Commission (VEC) administers the UI program.

9.    On March 13, 2020, the President declared the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501 (b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act").

10.    On March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA") into law. The FFCRA provides additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. It expands states' ability to provide UI for many workers impacted by COVID-19, including for workers who are not ordinarily eligible for UI benefits. The CARES Act provided for three new UI programs:   Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC").

11.    The first program, PUA, provides for up to 39 weeks of benefits to individuals who are self-employed, seeking part-time employment, or otherwise

would not qualify for regular UI or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act. Coverage includes individuals who have exhausted all rights to regular UI benefits or extended benefits under state or federal law or PEUC.   Under the PUA provisions of the CARES Act, a person who is a business owner, self-employed worker, independent contractor, or gig worker can qualify for PUA benefits administered by VEC if he/she previously performed such work in Virginia and is unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19 related reason. A PUA claimant must answer various questions to establish his/her eligibility for PUA benefits. The claimant must provide his/her name, Social Security Number, and mailing address. The claimant must also identify a qualifying occupational status and COVID-19 related reason for being out of work.   The eligible timeframe to receive PUA is from weeks of unemployment beginning on or after January 27, 2020 through December 31, 2020.

12.   The second program, PEUC, is a state-federal program that provides for up to 13 weeks of benefits to individuals who have exhausted regular UI under state or federal law, have no rights to regular UI under any other state or federal law, are not receiving UI under the UI laws of Canada, and are able to work, available for work, and actively seeking work. However, states must offer

6

flexibility in meeting the "actively seeking work" requirement if individuals are unable to search for work because of COVID-19, including because of illness, quarantine, or movement restriction. The eligible timeframe to receive PEUC is from weeks of unemployment beginning after the respective state has an established agreement with the federal government through December 31, 2020. The earliest being April 5, 2020. The description of this program is provided in this affidavit to provide the Court with a complete understanding of the various programs available. It is not, however, relevant to this particular investigation.

13. The third program FPUC, provides individuals who are collecting regular UI, PEUC, PUA, and several other forms of UC with an additional $600 per week. The eligible timeframe to receive FPUC was from weeks of unemployment beginning after the respective state had an established agreement with the federal government through July 31, 2020. The earliest being April 5, 2020.

14. On August 8, 2020, after FPUC expired, the President signed a Presidential Memorandum authorizing FEMA to use disaster relief funds pursuant to Section 408 Other Needs Assistance of the Stafford Act to provide supplemental payments for lost wages to help ease the financial burden on individuals who were unemployed as a result of COVID-19. The "Lost Wages Assistance Program"

7

("LWAP") served as a temporary measure to provide an additional $300 per week via a total of $44 billion in FEMA funds. The period of assistance for LWAP is August 1, 2020 to December 27, 2020, or termination of the program, whichever is sooner.

15. In total, more than $300 billion in additional federal funds for UI have been appropriated in 2020.

16. The PUA and FPUC programs (collectively, "pandemic benefits") are administered by the various states, including the Commonwealth of Virginia, but their benefits are funded by the federal government. In order to receive pandemic benefits, an applicant must access a website maintained by the Commonwealth of Virginia and file a claim.

17. Individuals are only eligible for PUA benefits if they are unemployed for reasons related to the COVID-19 pandemic and are otherwise available to work.

18. Once an applicant is at the website, the applicant is required to enter personal identifying information including their name, date of birth, social security number, email address, phone number, and physical address. An applicant is then required to answer a series of questions to determine their eligibility and payment amount.

19.    Upon completion, the application is submitted to the VEC.    If approved, the applicant is notified of the amount they will be paid per PUA, which is referred to the "benefit amount," and the amount they will be paid per FPUC, which is referred to as the "stimulus amount."

20.    The applicant can choose whether to have the pandemic benefits deposited directly into a bank account of their choosing, or the funds can be loaded on a pre-paid debit card which is then shipped to the applicant via United States Postal Service to the address listed on their application.

21.    In or around June 2020, the VEC began reviewing UI and PUA claims to identify fraudulent claims.   By August 2020, VEC officials had learned from other states that inmates in correctional facilities were receiving UI benefits. Incarcerated individuals are not available for employment so as long as their unemployment was a result of their incarceration and not related to COVID-19, nor are they able to seek full time employment.   These individuals are unemployed due to their own criminal conduct and not due to COVID-19 reasons.   For those reasons, they are not eligible to receive UI and PUA benefits.   Consequently, VEC obtained a list of approximately 39,000 inmates housed by the Virginia Department of Corrections ("VADOC") and cross-matched the Virginia UI and PUA claims to people who were shown to be claimants on the inmate list.   The

analysis revealed over 6,000 claims filed on the behalf of inmates in Virginia, totaling over $40 million in paid claims.

## PROBABLE CAUSE

22.    At the onset of the investigation a list was compiled of inmates housed in the Southwest Virginia Regional Jail Authority (SWVRJA) located in Abingdon, Haysi, and Duffield, Virginia.   On the original list of eighteen (18) names, there were three (3) names that had the same physical address on their PUA application.   Those inmates were Jared Mitchell, Eric B. Mullins, and Jonathan E. Smith.  The address listed was 108 Twin Circle Drive, Lebanon, Virginia 24266.

23.    A subsequent VEC check of that address found that there were thirty-seven (37) PUA applications utilizing the address of 108 Twin Circle Drive, Lebanon, Virginia 24266 (VEC 108 Twin List) .

24.    A public record check of that address resulted in finding that 108 Twin Circle Drive, Lebanon, Virginia, 24266 was the residence of JEFF TACKETT, CHYTKA, and GREG TACKETT.   This address is located in the Western District of Virginia.  All three (3) of these individuals' names were on the VEC 108 Twin List as having applied for PUA pandemic benefits.

25.    From February 26, 2020 until October 22, 2020, JEFF TACKETT was imprisoned at the SWRJA located in Duffield, Virginia which is in the

Western District of Virginia.  At no time during his incarceration did JEFF TACKETT have the means to file a claim for pandemic benefits.  CHYTKA was the girlfriend of JEFF TACKETT at the time he was incarcerated but lived with GREG TACKETT at 108 Twin Circle Drive.  At all relevant times, CHYTKA knew JEFF TACKETT was unavailable to accept work and was unemployed as a result of his imprisonment, rather than as a result of COVID-19.

26.     The investigation has revealed that when JEFF TACKETT went to jail in February 2020, he told his brother, GREG TACKETT to take care of his "girl" (CHYTKA) while he was incarcerated.  GREG TACKETT and CHYTKA began a relationship soon thereafter.  CHYTKA is now pregnant with GREG TACKETT's child.

27.     JEFF TACKETT was interviewed by investigators on January 12, 2021.  He advised that while he was incarcerated (February 2020- October 2020), CHYTKA advised him of a way they could make a little money.  She explained to him about the stimulus check and unemployment benefits.  She told him all she needed was his Social Security number.  CHYTKA told him that everybody is getting it.   This investigation determined that CHYTKA filed for JEFF TACKETT's unemployment while he was incarcerated.

11

28.    VEC records reflect that JEFF TACKETT's PUA application was initiated on June 2, 2020.  There was a total of $14,466.00 paid out of the VEC account of JEFF TACKETT.  The funds were administered on a prepaid debit card. The address listed on the application was 108 Twin Circle Drive, Lebanon, Virginia.  The telephone number listed was (XXX) XXX-5856.  This telephone number is known by investigators to be the cell phone number of CHYTKA.  The security question used for JEFF TACKETT's application was "What is your mother's maiden name?"  The answer listed is "walls" which is one of CHYTKA's known aliases, Danielle Walls.

29.    JEFF TACKETT advised there was only $2,000 left on his card when he got out of prison in October 2020.  JEFF TACKETT also advised that CHYTKA paid individuals $100 for their Social Security numbers.  JEFF TACKETT advised she gave him a little bit of that money.  He further advised he had CHYTKA sign up his mother Veronica Mullins and his grandfather, Danny Mullins.  The address on Veronica Mullins' and Danny Mullins' PUA application was 108 Twin Circle Drive, Lebanon, Virginia, with the telephone number as (XXX) XXX-5856 as well.

30.    Another individual on the VEC 108 Twin List is identified in this affidavit as CW-1. CW-1 was interviewed by investigators on January 12, 2021. At

12

the time, he was incarcerated at the SWRJA – Duffield, Virginia. During this interview, CW-1 told investigators that he was not incarcerated when he filed for his unemployment but admitted that he knew at the time that he was not eligible for PUA benefits because his unemployment was due to his own drug addiction. CW-1 further explained that he had not been employed since 2018.

31. CW-1, who resides in Wise, Virginia, stated that he went to 108 Twin Circle Drive, Lebanon, Virginia sometime in June 2020 where CHYTKA and GREG TACKETT resided together. CHYTKA entered CW-1's information in the computer for the purposes of assisting him in filing for PUA benefits even though he had not been working. CW-1 stated that CHYTKA was the main person who assisted him in filing for PUA benefits, but GREG TACKETT was there and knew what was happening. CW-1 advised he was going to pay them whatever they needed for him to get his "check". He advised he willing to give them at least ten percent (10%) for doing all the work in helping him to file.

32. VEC records reflect that CW-1's application was initiated on June 2, 2020. There was a total of $6,876 of VEC funds paid out of the VEC account of CW-1. The funds were administered on a prepaid debit card. The address listed on the application was 108 Twin Circle Drive, Lebanon, Virginia. The telephone

number listed on his application was (XXX) XXX-5856. His security question was "What is your mother's maiden name?" with the answer as "walls."

33. VEC records reflect that purchase were made on CW-1's card online and at various Virginia establishments in the Lebanon, Abingdon, and St. Paul as well as North Carolina establishments in Huntersville, Statesville and Blowing Rock from July 2020 – October 2020. The total expenditures on the card are in excess of $7,600.

34. CW-1 advised he never received any of the VEC funds or card from CHYTKA or GREG TACKETT.

35. CW-1 told investigators that sometime after December 2020, which was when GREG TACKETT went to back to jail, CW-1 was with JEFF TACKETT in TACKETT's black Tahoe. JEFF TACKETT had in his possession fifty-sixty (50-60) debit cards that he had taken possession of after GREG TACKETT went to jail.

36. JEFF TACKETT was apprehended again on January 11, 2021 for possession of drugs and drug paraphernalia. At the time of his arrest, JEFF TACKETT was in possession of twenty-eight (28) pre-paid debit cards in various names associated with this investigation. There were several cards for Jeff Tackett, Jeffery Tackett (2), Greg M. Tackett, Danielle Chytka (2), Jeffery

14

Tackett/AK Painting Co, Inc., Greg Takett, Leelyn Chytka (2), and Leelyn Walls (a known alias of CHYTKA). Notably, JEFF TACKETT was not in possession of cards for several other co-conspirators, including CW-1.

37.     In a jail house telephone call to his mother on January 11, 2012, JEFF TACKETT tells his mother:

JEFF TACKETT: "Um, they got me."

Mother: "What do they? I mean? With what?"

JEFF TACKETT: "It was fuckin' Danielle, man."

Mother: "With what, baby?"

JEFF TACKETT: "Because, look – all them fuckin' debit cards and shit...I can't talk about it on this phone, mom, but I'm – I'm done."

Mother: "oh, Jay!"

38.     When CW-1 was interviewed by investigators, he advised that his PUA card was in his possession when he was booked in the jail. CW-1 signed a release giving investigators possession of his card. It is believed that JEFF TACKETT gave CW-1 his card sometime between December 2020 and before he was arrested in January 2021.

15

39.   CW-1 advised that he is aware of other individuals who had CHYTKA and GREG TACKETT file for their VEC pandemic benefits.

40.   GREG TACKETT was released from jail sometime in December 2020. On January 4, 2021, he was arrested again in Russell County, Virginia in the Western District of Virginia by the Virginia State Police (VSP). The vehicle GREG TACKETT was driving when he was arrested was the 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA.

41.   He was charged with various charges including possession of a firearm by a prohibited person, possession of ammunition by a prohibited person, possession of a controlled substance (Methamphetamine laced with Fentanyl), driving while under the influence of drugs and Lying to a Police Officer. He remains incarcerated at the SWVRJA in Abingdon, Virginia.

42.   At the time of the arrest, the VSP Trooper noted that there were several cell phones and several debit cards with other people's names on them in the vehicle. The trooper did not seize the cell phones or the debit cards, as she was unaware of a federal investigation into GREG TACKETT for conspiracy to commit fraud. These items were left in the vehicle. One of the cards was a Way to

16

Go card in the name of Taylor B. Boland. There was mail in the car addressed to GREG TACKETT, 11045 Highland Avenue, Pound, Virginia.

43.    It is believed the debit cards left in the vehicle are evidence of the fraudulent VEC pandemic benefit scheme described throughout this affidavit.

44.    Based on your affiant's training and experience it is known that individuals involved in fraudulent schemes to defraud often utilize multiple cell phones to carry out their scheme. As such, your affiant is requesting to seize the phones left in the vehicle as evidence with the intention of obtaining necessary search warrants for the contents of the phones at a later date.

45.    GREG TACKETT was interviewed by investigators on January 12, 2021. He advised he signed up for pandemic benefits in May 2020. He advised that his "old lady" CHYTKA entered his information in the computer. He was formerly employed at Ace Tree Service and T & M Home Solutions. T & M was a company he made up to do handy man work. The reason there were so many names associated with the 108 Twin Circle Drive address was because there was a business operated out of the house called DNR Accounting LLC.

46.    GREG TACKETT could not or would not give any information about DNR Accounting LLC even though it was operated out of his residence. When asked if it was operated by CHYTKA, he would not answer.

17

47.    An analysis of the information listed on the VEC 108 Twin List shows that the security question "What is you mother's maiden name?" and "walls" as the answer was used twelve (12) times out of the thirty-seven (37) records.   The telephone number XXX-XXX-5856 was used seventeen (17) times out of the thirty-seven (37) records.  As stated above, the security question answer is a known alias of CHYTKA, and the cell phone is known to be CHYTKA's.

CONCLUSION

48.    Based on the forgoing, your affiant requests that the Court issue the proposed search warrant.   Because the warrant will be served on Hamilton's Wrecker Service who presently is in possession of the 2000 Dodge Pickup Truck, bearing Virginia registration 2121XE, VIN: 1B7HF13Z6YJ117900, black in color registered to LEELYN DANIELLE CHYTKA, there exist reasonable cause to permit the execution of the requested warrant.

Respectfully submitted,

Joseph Harrilla
Special Agent
United States Department of Labor
Office of Inspector General

18

Subscribed and sworn to before me *telephonically*

on January 19, 2021:

UNITED STATES MAGISTRATE JUDGE

//s/ Daniel J. Murphy

19